UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL NO. ___ |
| | § | |
| $1,005,470.63 SEIZED FROM | § | |
| FIRST SERVICE CREDIT UNION | § | |
| ACCOUNT x8155, | § | |
| Defendant. | | |

VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS

The United States of America, Plaintiff, files this civil action for forfeiture in rem against $1,005,470.63, which the United States contends constitutes the proceeds of health care fraud as well as property involved in money laundering. The United States alleges on information and belief as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1345 and 1355.

2. A substantial part of the acts and omissions giving rise to the forfeiture occurred in the Southern District of Texas. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355, 1391(b) and 1395(a).

THE DEFENDANT PROPERTY

3. The Defendant Property is $1,005,470.63 seized by the United States from a First Service Credit Union account held in the name of KJSJ Healthcare LLC with an account number ending in 8155 (hereinafter, the "Defendant Property").

## STATUTORY BASIS FOR FORFEITURE

4.      The United States alleges that the Defendant Property is subject to forfeiture as property constituting or derived from the proceeds of federal health care fraud; and as property involved in money laundering or traceable thereto.

5.      This is a civil action in rem brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C.] section 1956(c)(7) of this title), or a conspiracy to commit such offense."   A Federal health care offense, including violations of 18 U.S.C. § 1347 (health care fraud) and 42 U.S.C. § 1320a-7b(b) (kickbacks) is "specified unlawful activity" pursuant to 18 U.S.C. § 1956(c)(7)(F).   A conspiracy to commit health care fraud is a violation of 18 U.S.C. § 1349.

6.      This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 [of Title 18], or any property traceable to such property."   The United States alleges both Section 1956 "conceal and disguise" money laundering and Section 1957 monetary transactions involving more than $10,000 in proceeds of specified unlawful activity.

7.      With regard to the civil forfeiture of fungible property, 18 U.S.C. § 984 provides that funds deposited in an account in a financial institution that are found in the same account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture so long as the action is commenced within one year.   This provision

2

excuses the government from the tracing requirement with respect to such funds. In other words, hypothetically, if $100,000 in fraud proceeds were deposited into Account 1234 within the last twelve months, then the government may civilly forfeit an equivalent amount of $100,000 in funds from Account 1234, even if it is not exactly the same money that was deposited.

THE HEALTH CARE FRAUD CONSPIRACY

8.     The federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), prohibits the knowing and willful payment to induce or reward patient referrals or the generation of business involving any item or service payable by Medicare, which is a federally funded healthcare program. The United States alleges that there is evidence providing probable cause to believe that Bun Khath and others defrauded United States taxpayers by conspiring to pay and receive kickbacks so that they could benefit financially by billing Medicare for expensive skin wound grafts that are designed to be used on non-healing wounds.

9.     Bun Khath ("Khath") is a resident of Fort Bend County, Texas, who acted as the distributor of wound grafts in this conspiracy. Khath agreed to pay a Marketer a percentage of the money he received from medical providers if she could recruit patients to be treated with his wound care products and recruit providers to treat those wounds. The Marketer recruited a number of patients and two Medical Providers, who treated patients and billed Medicare for wound care products through a special Biller.

10.     Khath provided wound grafts to the Medical Providers at no upfront cost. Per the agreement, the conspirators' shares were calculated only after Medicare had paid the Medical Providers for the wound graft claims. The Medical Providers retained an

3

agreed-upon percentage of the amount Medicare actually paid for the wound grafts, which is an illegal kickback.   The Medical Providers transferred the remaining Medicare funds to Khath, and Khath paid the Marketer her kickback out of his share of the money.   The entire arrangement is in direct violation of the Anti-Kickback Statute.

BASIS FOR FORFEITURE OF THE DEFENDANT PROPERTY

11.     During 2025, Medicare paid the two Medical Providers over $4 million for 10 patients for wound graft claims which were procured with kickbacks, in violation of federal law.   Over time, the two Medical Providers paid Khath his share of the Medicare proceeds through three different bank accounts held in the name of three companies:   BKJ Business Equipment, Stark Livery, and KJSJ Healthcare.

12.     In total, one Medical Provider paid Khath $1,418,825.27 from the Medicare payments as Khath's share of the proceeds; and the other Medical Provider paid Khath $94,135.23 as Khath's share of the proceeds.   Ultimately, Khath consolidated his health care fraud proceeds into one bank account, from which the $1,005,470.63 Defendant Property was seized.

A.  BKJ Business Account

13.     BKJ Business Equipment was Khath's company, and it had a bank account at Primeway Federal Credit Union ending in 8050.   One of the Medical Providers paid him $114,852.48 through that account in February 2025.   After the bank offset the account due to some fraudulent loans that Khath had brokered, Khath in March 2025 moved the remaining $290,000 (including the $114,852.48 in proceeds) to the Stark Livery company bank account of a friend, an individual with initials WH.   Khath told WH that he had legal

troubles, and WH agreed to let Khath take control of WH's Stark Livery bank account.

B. Stark Livery Account

14.    Stark Livery had a bank account at Chase Bank ending in 8398, and WH and Khath were both authorized signors.   In addition to the $114,852.48 of proceeds transferred to the Stark Livery account, Khath received $681,934.18 in payments from the two Medical Providers to this account between March 2025 and early May 2025.   After Chase Bank notified WH in April 2025 that it intended to close the Stark Livery account, Khath asked WH to set up a company for him (KJSJ Healthcare LLC) for the purpose of opening a new bank account.

C. KJSJ Healthcare Account-8155

15.    KJSJ Healthcare LLC ("KJSJ Healthcare") is a limited liability corporation formed in April 2025 and located in Harris County, Texas.   WH is the purported owner of KJSJ Healthcare, but KJSJ represents the first initials of the names of Khath's children.

WH opened Account-8155 at First Service Credit Union in the name of KJSJ Healthcare.   At Khath's request, on or about May 16, 2025, WH wired $659,409.88 from the Stark Livery account to the new Account-8155. One of the Medical Providers subsequently paid Khath an additional $716,173.84 into KJSJ Healthcare Account-8155 before the bank temporarily froze the account.

D. Forfeiture as Fraud Proceeds

16.    Within the last 12 months, a total of $1,375,583.72 of deposits to Account-8155 consisted of payments by the two Medical Providers involved in the conspiracy. Pursuant to Section 984 of Title 18, United States Code, up to $1,375,583.72 of funds on

deposit in Account-8155 could be considered to be fraud proceeds.   The entire Defendant Property of $1,005,470.63, therefore, is civilly forfeitable as proceeds of health care fraud.

    E.   Forfeiture as Property Involved in Money Laundering

17.    There was a May 2025 transfer of $659,409.88 in proceeds from Stark Livery deposited to KJSJ Healthcare Account-8155.   Between May and August 2025, one of the Medical Providers paid $716,173.84 into Account-8155 in 6 separate deposits of more than $32,000 each time.

18.    Each deposit was a financial transaction containing more than $10,000 of proceeds of specified unlawful activity, in violation of Section 1957.   In addition, Khath did not want the bank to know he was involved with KJSJ Healthcare Account-8155 and used WH's name in order "to conceal or disguise" the ownership and control of the fraud in violation of Section 1956.   The Defendant Property seized from Account-8155 is thus also subject to forfeiture as property "involved in" money laundering.

## NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED that if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.   The verified claim must be filed no later than 35 days from the date this complaint was sent to you in accordance with Supplemental Rule G(4)(b); or, if this Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official internet government forfeiture site, in accordance

with Supplemental Rule G(5)(a)(ii)(B).

An answer or a motion under Federal Rule of Civil Procedure 12 must be filed no later than 21 days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, and a copy served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

RELIEF REQUESTED

The United States will serve notice, along with a copy of the Complaint, on the account holder and on any person who reasonably appears to be a potential claimant.

The United States seeks a final judgment forfeiting the Defendant Property to the United States and requests any other relief to which the United States may be entitled.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney
Southern District of Texas

By:   /s/ *Kristine E. Rollinson*

Kristine E. Rollinson
SDTX Federal No. 16785
Texas State Bar No. 00788314
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
Phone 713-567-9000

7

## VERIFICATION

I, Jillian Bell, Special Agent with the United States Internal Revenue Service Criminal Investigation, declare under the penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 3 and 8 - 18 of the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation.   Those facts are true and correct to the best of my knowledge and belief.

Jillian Bell, Special Agent
Internal Revenue Service-CI